Freedman, J.
The plaintiff in the above-entitled action obtained a judgment against the defendant, May 4,1880, for the sum of $2,851.96, and on the same day issued to the sheriff execution against the property of the defendant.
On May 10, 1880, the sheriff, through his deputy,. William F. Schneider, levied upon property of the-defendant, which consisted of the contents of three-grocery-stores, known as Nos. 631 and 776 Tenth avenue, and No. 1470 First avenue, in the city of New York, and at the request of the attorney for the-plaintiff to place keepers in charge, appointed one-man to watch the Tenth avenue stores, and another to-watch the First avenue store.
On May 17, 1880, the contents of the store No.. 776 Tenth avenue, in consequence of the termination of summary proceedings successfully prosecuted by the landlord of the premises for the dispossession of the defendant, were removed by the sheriff, by direction of the attorney for the plaintiff, to the store No. 631 Tenth avenue.
*500 On May 18, 1880, the contents of the Tenth avenue stores were sold by the sheriff, at No. 631 Tenth avenue, and realized the stun of $2,360.63.
On May 19, 1880, the contents of the First avenue store were sold by the sheriff, and realized the sum of $340.25.
After the said sales, the sheriff failed to return the execution, until required to do so by an order of this court dated July 6, 1881. By order dated July 20, 1881, he was further required to present his bill of fees for taxation.
The sheriff now comes into court and insists that his bill for fees and disbursements has already been "adjusted and approved by the plaintiff personally, and that, as thus adjusted and approved, it should be allowed as follows, viz.:
On the sale of the Tenth avenue stores: Charges:
Auctioneer's commission, $236 00
Labor, . . 35 00
Catalogues, . . 10 00
Advertising, 4 60 $285 60
Sheriff's costs, &c.
Poundage, $32 63
Levy and return, 2 69
Noticing and posting sale, 10 00
Keepers' fees, 190 00
Labor, 150 00
Cartage, .125 00
Inventory, 25 00
Deputy's compensation, 150 00
685 32
$970 92
*501 On the sale of the First avenue store : Charges:
Auctioneer’s commission, . $34 00
Labor, cataloguing, 5 25
Advertising, CO 80 43 05
Sheriff’s costs:
Poundage, 7 40
Levy and return, 2 69
Noticing and posting sale, 10 00
Inventory, 25 00
Keepers’ fees, 60 00
Deputy’s compensation, 50 00
. $155 09
$198 14
Total, $1,169 06
The claim is, that after the sales named there was a ■ meeting between the plaintiff and the deputy sheriff,, at the house of the latter, where the fees and charges were explained to the plaintiff, and that thereupon the plaintiff approved of them by signing the account sales. This is sworn to in general terms by the deputy sheriff, and several witnesses, who were closely connected with him in the execution of the process, and are interested in the result of this proceeding, but no definite particulars are given showing that an opportunity was given to the plaintiff, who was there without counsel, to clearly comprehend the matter. The plaintiff and several witnesses on his behalf, on the other hand, not only deny the alleged .explanation and approval, but detail a number of circumstances which, if true, show that plaintiff’s signature was obtained partly by trick *502 and partly by threats. But, however the precise fact may have been, it is sufficient to say that, upon the sheriff’s own theory and showing, there was no estoppel. The policy of the law, which will presently be referred to, does not permit such a result. The sales had been made, the fees earned, and the disbursements incurred, and no final settlement was then had, nor did any since take place. No new responsibility, risk or expense was incurred by the sheriff on the faith of the alleged approval. In whichever aspect I may look at that branch of the case, I can come to no other conclusion than that the plaintiff did nothing amounting to a forfeiture of his right to insist upon a taxation of the sheriff’s fees and disbursements according to law.
The sheriff’s bill must therefore be considered upon its merits, and to that end the sheriff submits the following, viz. :
“ Sheriff’s Fees:
Poundage, 32., 63., 7.40, . . . 40.03
Levy and return, 2.69., 2.69., . . 5.38
Noticing and posting sales, $10., $10., . 20.00
Inventory, $25., $25., . . . 50.00
Expenses taking care of and preserving property :
To cash paid Charles Linderman, keeper, 60.00
“ “ “ William Ward, “ 50.00
“ “ “ James Dillon, “ 66.00
May 17, ’81.
To cash paid Frederick Boekhorn, cartage and labor, &c., in removing goods from 776 10th av., to 63110th av., . . 125.00
To cash paid Peter Feix, 111 E. 3d st., labor, handling' goods at 631 10th Av., 16 hours, . . . .6.40
To cash paid John Hefle, 111 E. 3d st., 16 hours, . . . . 4.80
*503 To cash paid Denis Flynn, 10th av., 16 hours, . . . . $6.40
To cash paid Charles Zipf, 111 B. 3d st., 16 hours, . . . .4.80
To cash paid Charles Schneider, 413 Bleeckerst., 16 hours, . .4.40
To cash paid Hugh O’Donnel, 16 hours, 6.40
To cash paid William McCarthy, 16 hours, 5.60
May 18, ’80., at 631 10th At.
To cash paid Emil Dresler, all day labor, 5.00
To cash paid Chas. Zipf, all day labor, 5.00
To cash paid Peter Feix, all day labor, 5.00
To cash paid Charles Schneider, all day labor, . . . 3.00
To cash paid John Hefle, all day labor, 5.00
To cash paid Hugh O’Donnel, all day labor, . . . .5.00
Two men watching goods all night, $5.00 each, .... 10.00
May 19, ’81, at 1470 1st Av.
To cash paid Emil Dresler, labor, . 5.00
To cash paid Charles Zipf, labor, . 3.00
To cash paid John Hefle, labor, . . 3.00
To cash paid Charles Schneider, labor, 2.00 To cash paid Hugh O’Donnel, labor, . 3.00
To cash paid at request of O’Connors, for special messenger to court-house, for information as to injunction, . . 5.00
To cash paid various miscellaneous expenses, incurred and paid by deputy, 120.00
For additional compensation for trouble, &c., taking care of and preserving property, . . . .. 200.00
Paid auctioneer by agreement,
“City and County of Hew York, ss:
William F. Schneider, being duly sworn, says that *504 he is the deputy who executed the above-mentioned process; that the foregoing disbursements have been actually paid or incurred by him in the course of his executing the said process.
“William F. Schneider.
“ Sworn to before me, this 18th )
. day of August, 1881. |
John H. Leary,
Notary Public,
1ST. Y. Co. (18).”
Before proceeding to the consideration of these items, it may be well to refer briefly to the provisions of law applicable to the case. As the services were rendered and the disbursements incurred in May, 1880, •and section 3307 of the Code of Civil Procedure did not go into effect until September, 1880, and as by express provision, the Code of Civil Procedure does not affect rights that became vested .before the time it took effect, the case is governed by the provisions of the Revised Statutes, as they existed in May, 1880. At common law, the sheriff was not entitled to charge anything for executing process. In this State the fees of sheriffs have been regulated by the statute, which also prescribed their duties. In addition, the Revised Statutes contained a general prohibition against the taking or receiving by any sheriff of any other or greater fee or reward, for any service, than that allowéd by law (2 Rev. Stat. 650, § 5); also, against demanding any fee or compensation allowed by law for any service, unless actually rendered (Id. § 6); and any violation of these provisions was made a misdemeanor and rendered the person guilty thereof, liable to the party aggrieved in treble damages (Id. § 7). It was also made the duty of every court at which a grand jury was summoned, to charge it specially to inquire into any violation of this law (Laws 1847, c. 455, § 17).
*505 These statutory provisions have been construed to mean: 1. That no fee, or expense, or disbursement, incurred under executions against property, can be allowed, no matter what the exigency of the particular-case, unless some warrant for the allowance can be found in the statute ; 2. That the sheriff accepts office, upon the condition of performing its entire duties for such compensation as is specifically allowed by express provision of law, and without right to claim any other remuneration; 3. That this necessarily includes and limits the power of the sheriff to delegate to any other person any right to any extra compensation which he could not himself claim ; 4. That even a promise to-pay him extra compensation for services in the performance of his official duty, or such acts as are incident thereto, is void; 5. That the policy of the law unmistakably is, that when its executive officers go-among the people to lay hands upon their property, they should be allowed to proceed only under every needful restriction against the temptation to eat out the substance of the people by an increase, in .magnitude or diversity, of the charges and expenses of official service.
It is unnecessary to refer further to the authorities-upon these propositions than to say that a full collection and discussion of them may be found in the reports of the case of Crofut v. Brandt, which appear successively in 13 Abb. Pr. N. S. 128 ; 5 Daly, 124, and 58 N. Y. 106, in which case the sum of $19.29 only, was allowed, on a sheriff’s bill calling for $419.17.
It becomes important now to consider what‘the statutes in force in May, 1880, did allow to the sheriff for levying upon and selling goods under an execution. The sheriff was allowed :
For serving an execution- for the collection of money, six cents per mile for traveling to make service, in going from the court-house ; for collecting *506 the sum of $250, two cents and five mills per dollar, ■and for every dollar collected more than $250, one cent and two and a half mills, which percentage is known as poundage ; for advertising goods and chattels for sale, two dollars; and if the execution be stayed or settled after advertising and before sale, one dollar; for returning a writ, twelve and a half cents ; and for receiving and entering the execution, fifty cents.
The fees thus fixed cover all that the law permitted •to be charged. With regard to the poundage, it has been repeatedly held that the statutory allowance of it covers every form of expense and disbursement and risk, which the sheriff may incur in the performance of his official duty in levying upon property under an ■execution, in taking charge of it, guarding it, and .arranging it for sale, as well as selling it. . It is only when, by the special request and upon the promise to repay of a party to the execution, and for his benefit nr convenience, the sheriff performs a service or incurs ■expense, which by a proper discharge of his duty he is not bound to perform or to incur, that he may recover the amount from such party. Even then, however, the authorities are that such additional service or expense constitutes no lien on the property levied on, and cannot be properly allowed as a taxable item, but that the sheriff has a right of action for the same.
True, there always was a class of cases, as for instance on attachment, in which, in addition to specific fees, the statute authorized such additional compensation for the sheriff’s trouble and expense in taking possession and preserving the property attached, us might be certified or allowed by the taxing officer. 'These cases are not in point here. In them the sheriff was not entitled to poundage, and hence the provision for a reasonable compensation to be allowed on taxation. But on an execution the sheriff was always entitled to poundage, whether he sold or not, and *507 therefore had to look to that and his statutory fees for full compensation for his services, and all trouble, expense and risk necessarily incidental thereto.
Having now ascertained the state of the law at the time of the rendition of the services, I shall proceed to deal with the bill presented. As to most of the items contained therein it is quite vague and indefinite. Part of the disbursements claimed, are stated to have been paid or incurred in the year 1881, and part in 1880, which cannot be true. The bill is not even footed up. When that is done, it will be found to amount to $834.01, which is $335.05 less than the amount claimed in the account sales. The affidavit annexed to it is so peculiarly worded as to amount to very little, if any, proof, and resort must therefore be had to the other affidavits in the case. As a whole, I regret to be compelled to say, the bill is but another specimen of a class of bills that have always met with prompt and severe condemnation at the hands of the court whenever properly brought before it.
On proceeding to a minute examination, it will be seen that the difference between the amount of the bill as now presented, and the aggregate amount of the bills attached to the account sales, arises mostly from the fact that the bills last named' contain certain alleged commissions and charges of an auctioneer, while the one now presented, though claiming a payment to an auctioneer, mentions no sum. If such omission could be taken as a waiver of the claim, the point would be disposed of. But as on the argument it was strenuously insisted that the auctioneer’s commissions and charges should be allowed as they appear in the bills annexed to the account sales, I feel bound to say that no allowance can be made therefor, because, in the absence of a request from the plaintiff or his attorney to employ an auctioneer, the sheriff was bound to conduct the sale himself, and there is no evidence estab *508 listing such a request. A mere expression of satisfaction with the manner in which the sale was conducted, is not enough. Even a promise to pay, if made after the sale, is not sufficient unless founded upon a new and valid consideration. ¡Nor can the plaintiff be held bound for the auctioneer’s commissions and charges by reason of the fact that he was induced to.affix his signature to the account sales, and did sign them, in order to obtain a payment merely on account of the proceeds of the sale:
As to the amount charged for poundage, no question has been raised.
In place of the item of $5.38, charged for a double levy and return, all that can be allowed is :
Receiving and entering execution, . . .50
Return, . . . . .13
Travel, say five miles, . ' .,,.30
The item of $20, for noticing and posting sales, is also excessive. Assuming that' there were two separate and distinct sales made at the request of the plaintiff, all the sheriff can charge in the absence of proof of additional disbursements incurred, over and above those he was bound to incur, is :
Advertising sales $2.00 each, . . $4.00
Fee after advertising and before sales, $1.00 each, ..... 2.00
The item of $50 for making an inventory for each sale, is totally unauthorized. This service is covered by the poundage.
The remaining items charged for keepers’ fees, cartage and labor in removing goods from 776 to 631 Tenth avenue, hauling goods, labor, night watchmen, special messenger, various miscellaneous expenses, *509 and additional compensation for trouble, are sought to be upheld on the theory that from May 4th to May 10th, at the request of the attorney for the plaintiff, made in consequence of the pendency of negotiations for a settlement between the plaintiff and other creditors and the defendant, the sheriff delayed to make an actual levy ; that on May 10, the attorney for the plaintiff gave direction to place keepers in charge of the stores, and on May 16th, directed the removal of the contents of store No. 776 to No. 631 Tenth avenue, with a promise to reimburse the sheriff for the expenses of such removal; and that subsequently the plaintiff, on several occasions, assured the sheriff that he' should be well paid for his trouble and expense. The evidence, indeed, does show, and it is conceded, that the attorney for the plaintiff did make the request and give the directions and promise as stated, and that subsequent to the sale the plaintiff made assurance as mentioned. Now, so far as the sheriff’s “trouble” is concerned, the evidence fails to show that, in consequence of the directions or promises stated, the sheriff or his deputy personally performed any extra service, and as to all acts which the sheriff was bound to perform as a part of his duty, the promises of liberal pay for “trouble” were, as above shown, void. It cannot be claimed that the delay from May 4th to May 10th, in making a levy, constituted an extra service, or caused the sheriff extra trouble, nor did it add to his responsibility or risk, because it was done pursuant to the request of the attorney who issued the execution, and hence, I do not see how the amendment introduced by subd. 7 of section 3307 of the Code of Civil Procedure, could help the sheriff, even if it did apply to the present taxation. And, finally, I must reiterate that in no case does the law permit the sheriff to delegate to his deputy or any other person, any right to any extra compensation which he *510 cannot himself claim. Under these views, the item of $200, for “additional compensation for trouble,” &c., is wholly destitute of any legal foundation.
The item of $120, for “various miscellaneous expenses incurred and paid by the deputy,” could only be allowed as an actual disbursement upon proof of the details and the character of the alleged expenses, and that they were reasonably incurred at .the special request of the plaintiff or his attorney in a matter outside of the strict official' duty of the sheriff. The burden to show this is upon the sheriff. But he has wholly failed to do this. That item must consequently be disallowed. For the same reasons the charge of $5.00 for a special messenger must be disregarded.
The items remaining to be considered are claimed to represent the expenses incurred by the sheriff in placing keepers in charge, and in removing the goods of- one store to another, for the purpose of sale. In complying with the directions of the attorney for the plaintiff upon these points, the sheriff acted outside of his official duty, for the benefit or convenience of the plaintiff; for all he was bound to do was to remove the goods levied upon, at once, to his own storeroom, and advertise them for sale, and this entitles him to a recovery of the expenses reasonably incurred by him for that purpose. Here, again, the sheriff’s proof is fatally defective in not showing the necessity and reasonableness of all the expenses claimed as actual disbursements. Some of these he undoubtedly incurred, but to what extent he can justly lay claim to compensation, it is not easy to determine, as the affidavits widely differ as to the extent, reasonableness and necessity of the greater portion of them. Under these circumstances, I might, under the authorities, well rule that the sheriff’s right to such compensation is only a right of action, and constitutes no lien on the proceeds in his hands, and consequently cannot be *511 allowed on taxation, which is limited to the -adjust-me.nt of mere statutory fees and allowances. But as the plaintiff waived the point and, in view of the long delay already had, and in order to end litigation, expressly consented that a reasonable compensation should be allowed therefor in this proceeding, and furthermore, as the sheriff may be assumed to have made the best presentation of the facts of his case-which the case is capable of, 1 deemed it my duty to-determine the question. To that end I carefully examined all the proofs submitted, and the conclusions reached are as follows: Upon the claim for keepers’ fees, an allowance should be made for the services of Wm. Ward, who had charge of the Tenth avenue stores, from May 10th to May 18th, a period of nine days, and for the services of Chas. Lindeman, who had charge of the First avenue store, from May 10th to May 19 th, a period of ten days. There being no proof that they watched day and night without interruption, or that they slept on the premises, or even that they were-there continuously during the day-time, an allowance of three dollars per day to each of them, to which the-plaintiff has consented, is a sufficient compensation.
The claim for two special night watchmen at Mo. 631 Tenth avenue, during the night from May 17 to-May 18, must be disallowed in view of the fact that during the whole of that night the auctioneer was therewith five assistants bo arrange for the sale on May 18.
As to the removal of the goods from Mo. 776 toMó. 631 Tenth avenue, the fair inference from the mass of conflicting statements upon the point, is that six men, two wagons and two drivers, were engaged in it. The wagons consisted of a one-horse cart and a two-horse truck. It does not appear how many loads, were actually removed, nor does the proof show the-real magnitude of the undertaking, except that, beyond the facts already stated, it further appears that the- *512 removal was effected in the course of one day. From all that appears, $3 per day, for each of the men and drivers employed; $6, for the one-horse cart; •and $10, for the two horse truck; amounting together to the sum of $40, seems to be an ample allowance.
For the reasons stated, the sheriff’s bill is hereby taxed as follows:
Poundage, . $40.03
Receiving and entering execution, 50
Return, ... . 13
Travel, . , . . 30
Advertising sales, $2.00 each, 4.00
After advertising and before sales, 2.00
Compensation of Wm. Ward, as keeper, nine days, .... 27.00
Compensation of Chas.Lindeman as keeper, ten days, .... 30.00
Expenses for removal of goods from No. 776, to No. 631, Tenth avenue, , . 40.00
Total, . . ... $143.96
Let an order be entered accordingly.